UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC#:                            │
│ DATE FILED:  9/18/2020           │
└─────────────────────────────────┘
```

---

WENDY SHINE, *individually and
on behalf of her minor child*, C.W.,

                              Plaintiff,

          v.

NEW YORK CITY HOUSING AUTHORITY,

                              Defendant.

---

No. 19-cv-04347 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Wendy Shine, individually and on behalf of her minor child, C.W., brings this action against the New York City Housing Authority ("NYCHA"). Shine claims that NYCHA's failure to make reasonable accommodations to abate mold in her and C.W.'s apartment violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.* She also asserts state tort law claims for negligence and intentional infliction of emotional distress. NYCHA now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, NYCHA's motion is granted, albeit without prejudice. Shine is thus granted leave to amend the Complaint to address the deficiencies noted herein.

## BACKGROUND

The following facts are drawn from Shine's Complaint, Dkt. 1 ("Compl."), and are assumed to be true for the purposes of resolving NYCHA's motion to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  In or about February 2005, Shine moved into an apartment located in NYCHA housing at 2175 5th Avenue.  Compl. ¶¶ 2, 32.  She alleges there was no mold present at the time she moved in.  *Id*. ¶ 33.  In November 2016, Shine noticed water dripping into her apartment, eventually causing a black hole to form.  *Id*. ¶ 33.  That month, she called NYCHA to notify it of mold on her bedroom ceiling, but her call was never returned.  *Id*. ¶ 34.  Shine made a second complaint to NYCHA regarding the mold in December 2016.  *Id.* ¶ 35.  In January 2017, NYCHA sent a representative to examine the apartment.  *Id.* ¶ 36.  During the examination, the representative took pictures of the mold, but no remedial work was performed.  *Id.*  In January 2017, the ceiling in Shine's bedroom where the mold was located collapsed and fell onto her shoulder.  *Id.* ¶ 37.  As a result of the ceiling collapse, Shine alleges she "suffered torn ligaments in her shoulder, has constant pain in her shoulder, [] at times cannot lift her arm . . . has trouble sleeping, trouble cleaning her Apartment because she feels constant pain when using certain tools, and cannot fully perform her duties at work because she cannot pick up buckets of mail to place on the scanner." *Id*.  Following the ceiling collapse, water continued to leak into the apartment.  *Id*. ¶ 38.

Although Shine filed a third complaint about the mold in January 2017, NYCHA again failed to remove the mold.  *Id*. ¶ 38.  After Shine filed a fourth complaint concerning both the mold and the hole in her ceiling in February 2017, NYCHA made an appointment to send an inspector. *Id*. ¶ 39.  On the date of the appointment, however, no one from NYCHA showed up.  *Id*.  In April 2017, the building superintendent said he would get someone to remove the mold and paint Shine's bedroom.  *Id*. ¶ 40.  Shine also spoke with the building's manager regarding these purported repairs.  *Id*.  Yet Shine alleges that NYCHA neither painted nor performed any repairs to remove the mold.  *Id*.

In the absence of remediation, Shine claims the mold "has created dangerous and hazardous living conditions" that have led her to experience "trouble breathing at night, trouble sleeping, severe headaches, mucus buildup, and [an inability to] fully perform her duties at work." *Id.* ¶ 42. Shine alleges she never experienced these symptoms before December 2016. *Id.* Shine also claims that the mold has caused her son, C.W., who has asthma, to "[have] trouble breathing and get[] headaches." *Id.* ¶ 43. She further contends that the mold has "forced" her to "put C.W. on an asthma machine so he can breathe properly." *Id.*

## PROCEDURAL HISTORY

Shine filed the Complaint on May 13, 2019, alleging violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the NYSHRL, Compl. ¶¶ 46-52, 53-60, 74-79, as well as common law negligence and intentional infliction of emotional distress, *id.* ¶¶ 61-67, 68-73. On September 19, 2019, NYCHA filed a motion to dismiss. *See* Dkt. 12. Shine responded in opposition on December 13, 2019, Dkt. 9, and NYCHA replied on January 7, 2020, Dkt. 20.

On August 3, 2020, the Court directed the parties to submit supplemental briefing on particular issues, Dkt. 21, which they did on August 14, 2020, Dkts. 22-23.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving

party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).  The Court, however, need not credit "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

**I.**     **Shine Has Failed to Plausibly Allege a Violation of the ADA or Section 504 of the Rehabilitation Act**

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Because of similarities in the [] statutes, we consider reasonable accommodation claims arising under the ADA [and] Rehabilitation Act [] in tandem." *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18 (2d Cir. 2015) (citing *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)).

"Exclusion or discrimination" in violation of the ADA "may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (citations omitted).  Shine alleges that she repeatedly "asked NYCHA for reasonable accommodations and modifications and to remediate the mold in the Apartment," but that "NYCHA has not corrected the recurrent mold and moisture conditions" or "otherwise provided . . . accommodations and remedial work."  Compl. ¶¶ 44-45.

4

The Court thus construes Shine's ADA and Rehabilitation Act claims as claims for failure to provide a reasonable accommodation.

The ADA "requires that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45 (2d Cir. 2002), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553, *as recognized in McCulloch v. Town of Milan*, 559 F. App'x. 96, 98 (2d Cir. 2014). This requirement reflects Congress's recognition "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 197 (2d Cir. 2014) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)). "[T]he duty to make reasonable accommodations is framed by the nature of the particular handicap." *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 344 (E.D.N.Y. 2005) (quoting *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998)). A public entity "does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee*, 700 F.3d at 641. "Instead, the Acts require only reasonable modifications that would not fundamentally alter the nature of the service provided, or impose an undue financial or administrative burden." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 197 (2d Cir. 2014) (internal quotation marks, citations, and brackets omitted).

"To state a *prima facie* case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) [s]he suffers from a . . . disability as defined by the ADA and Rehabilitation Act; (2) the defendant knew or reasonably should have known of the plaintiff's . . . disability; (3) accommodation of the . . . disability may be necessary to afford

plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant[] refused to make such accommodation." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014) (internal quotation marks, citations, and brackets omitted); *see also McMillan v. City of New York.*, 711 F.3d 120, 125-26 (2d Cir. 2013) (describing the elements of an ADA reasonable accommodation *prima facie* case in the employment context, including the requirement that "an employer covered by the statute had notice of [the plaintiff's] disability"); *Pinckney v. Carroll*, No. 18-CV-12198 (VEC), 2019 WL 6619484, at \*6, \*8 (S.D.N.Y. Dec. 4, 2019) (denying motion to dismiss in part because "Plaintiff alleges that [her mother] explained her disability and resulting need for an accommodation directly to Defendants multiple times so that [they] knew Plaintiff was seeking an accommodation and had ample opportunity to provide one").[1] Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions, and then the burden shifts back to the plaintiff to produce evidence that the discrimination was a result of his or her disability and not the defendant's stated reason. *See McMillan*, 711 F.3d at 125; *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96–97 (2d Cir. 2009).

For the reasons that follow, the Court finds that Shine has plausibly alleged that C.W. is disabled under the ADA and Rehabilitation Act, yet has failed to plausibly allege that she has a

---

[1] The parties' initial briefs relied on *Tull v. New York City Housing Authority*, which stated that a plaintiff bringing a failure to accommodate claim must allege four elements of a *prima face* case: "(1) she is a qualified individual with a disability; (2) the defendant is subject to [the ADA or the Rehabilitation Act] and (3) she was denied the opportunity to participate in or benefit from the defendant's services, or was otherwise discriminated against by the defendant because of her disability." 722 F. App'x. 75, 78 (2d Cir. 2018) (internal quotation marks, citations, and brackets omitted). Although the *Tull* court did not list the defendant's knowledge of the plaintiff's disability as an element of the plaintiff's *prima facie* case, the defendant's knowledge was never at issue because the plaintiff alleged she repeatedly told the defendant about her medical condition and provided letters from her doctors. *Id.* Here, by contrast, NYCHA argues it had no knowledge of Shine and C.W.'s alleged disabilities. After the Court directed the parties to file supplemental briefing regarding whether a plaintiff bringing a failure to accommodate claim needs to allege that the defendant "knew or reasonably should have known" of the plaintiff's disability as an element of her *prima facie* case, both parties agreed that a plaintiff must so allege, yet disputed whether Shine had, in fact, done so here. *See* Dkt. 22 at 2-7; Dkt. 23 at 1.

cognizable disability.  She has also failed to plausibly allege that NYCHA knew or reasonably should have known of either of their alleged disabilities.  Shine has therefore failed to establish a *prima facie* case.

### A.   Shine Has Plausibly Alleged That C.W Has a Cognizable Disability, But Has Failed to Plausibly Allege That She Has a Cognizable Disability

In 2008, Congress passed the ADA Amendments Act ("ADAAA") to expand coverage for individuals under the ADA.  The ADAAA directs courts to construe the term disability "in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]."  42 U.S.C. § 12102(4)(A).  Under regulations promulgated pursuant to the ADA, a disability is defined as "(i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual, (ii) [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment."  28 C.F.R. § 35.108(a)(1)(i-iii).  "The Court of Appeals for the Second Circuit has held that district courts should apply the three-step approach taken by the Supreme Court in *Bogden v. Abbott*, 524 U.S. 624 (1998), to determine whether a plaintiff is disabled."  *Hernandez v. Int'l Shoppes, Inc.*, 100 F. Supp. 3d 232, 257 (E.D.N.Y. 2015) (citations omitted).  Under that approach:

> [The] plaintiff must first show that she suffers from a physical or mental impairment. Second, she must identify the activity claimed to be impaired and establish that it constitutes a major life activity. Third, the plaintiff must show that her impairment substantially limits the major life activity previously identified.

*Id*. (quoting *Weixel*, 287 F.3d at 147).  Shine must therefore plausibly allege that one or more of her and/or C.W.'s alleged ailments constitutes a physical or mental impairment that substantially limits a major life activity.

The regulations define a physical or mental impairment as:

> Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular,

reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.

28 C.F.R. § 35.108(b)(1)(i).

The regulations also provide that "[m]ajor life activities include but are not limited to":

(i) [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working; and (ii) [t]he operation of a major bodily function, such as the functions of the immune system, special sense organs and skin, normal cell growth, and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive systems. The operation of a major bodily function includes the operation of an individual organ within a body system.

*Id.* § 35.108(c)(1); *see also Anderson v. National Grid, PLC*, 93 F. Supp. 3d 120, 133 (E.D.N.Y. 2015). A plaintiff must specifically allege which major life activities are substantially limited by the claimed disability to establish a *prima facie* case. *See Amador v. Macy's E.-Herald Square*, No. 12 CV. 4884 MHD, 2014 WL 5059799, at *11 (S.D.N.Y. Oct. 3, 2014) (granting motion to dismiss because "in none of plaintiff's submissions . . . does she list or otherwise specifically identify which major life activities she is claiming were impacted by her injuries").

Finally, the regulations define the term "substantially limits" as follows:

The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard . . . . An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

28 C.F.R. § 35.108(d)(1).

As described above, Shine alleges that "[a]s a result of the mold and ceiling collapse, [she] suffered torn ligaments in her shoulder, has constant pain in her shoulder, and at times

cannot lift her arm." Compl. ¶ 37. "[She] also has trouble sleeping, trouble cleaning her Apartment because she feels constant pain when using certain tools, and cannot fully perform her duties at work because she cannot pick up buckets of mail to place on the scanner." *Id.* She further asserts that she "has trouble breathing at night, [] severe headaches, [and] mucus buildup" and "the mold in the Apartment has forced [her] to put C.W. on an asthma machine so he can breathe properly." *Id*. ¶¶ 42-43.

For the reasons that follow, the Court concludes that although Shine's alleged impairments may well rise to the level of cognizable disabilities, she has failed to allege sufficient detail with respect to how her impairments substantially limit one or more major life activities. Shine has, by contrast, plausibly alleged that C.W. experiences a substantial limitation to the major life activity of breathing, and therefore has a cognizable disability within the meaning of the ADA.

**1.  Shine's Alleged Disabilities**

**a.  Torn Ligaments and Pain in Shoulder Leading to Trouble Lifting Arms and Picking up Buckets of Mail**

The Court first considers Shine's claim that "at times [she] cannot lift her arm," and "cannot fully perform her duties at work because she cannot pick up buckets of mail to place on the scanner" due to "torn ligaments in her shoulder" and "constant pain in her shoulder." Compl. ¶ 37. Shine's torn ligaments and constant shoulder pain constitute physical impairments under the ADA regulations' broad definition, *see* 28 C.F.R. § 35.108(b)(1)(i), and her inability to lift her arm "at times" or "fully perform her duties at work because she cannot pick up buckets of mail to place on the scanner" constitute limitations on the major life activities of "lifting" and "working," *id*. § 35.108(c)(1).

Shine has failed to plausibly allege, however, that her torn ligaments and shoulder pain have *substantially* limited her ability to lift or to work. Her allegation that she cannot lift her arm "at times" is impermissibly vague—it could mean she experiences an inability to lift her arm on a weekly, monthly, or even less frequent basis—and it is unclear how long her inability to lift her arm lasts each time it occurs. *See, e.g.*, *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 15 (2d Cir. 2011) (holding an "impairment must be 'permanent or long-term' to be 'substantially limit[ing]' and that a "single reference" to "difficulty moving" furniture, desks, and file cabinets was insufficient to establish that plaintiff was substantially limited in major life activity of lifting) (quoting *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 196 (2002) (superseded by ADA Amendments Act of 2008, Pub.L. 110–325, 122 Stat. 3553)).

Shine's allegation that she "cannot fully perform her duties at work because she cannot pick up buckets of mail to place on the scanner" also lacks adequate specificity. Although Shine has alleged that is unable to perform one of many duties of her current position, she has failed to allege that she is, in fact, "substantially limited" in her ability to work. Her Complaint contains no factual allegations regarding her job and the duties it entails, nor does it explain how and why the ability to lift buckets of mail is essential to her job. Shine may not face a substantial limitation in her ability to work despite her inability to pick up buckets of mail if, for example, she can still scan mail by lifting a half bucket at a time or she can still perform other non-scanning duties. The Second Circuit has held, for instance, that a trucker who alleged he could not lift 75 pounds or engage in repetitive lifting failed to establish a "substantial limitation" in his ability to work because "while this may disqualify him from his past position . . . or other jobs requiring heavy or repetitive

lifting, . . . it is insufficient to show that he is disqualified from truck driving positions generally." *Wegner v. Upstate Farms Co-op., Inc.*, 560 F. App'x 22, 24 (2d Cir. 2014). Shine has also failed to plead any factual allegations regarding the weight of the buckets that she is unable to lift. *See Morris v. Town of Islip*, No. 12-CV-2984 JFB SIL, 2014 WL 4700227, at *10 (E.D.N.Y. Sept. 22, 2014) ("[N]umerous courts have held, as a matter of law, that the weight limitation similar to [the 15 pound lifting restriction] claimed by plaintiff is insufficient to establish a substantial limitation on one's ability to lift, work, or perform any other major life activity.") (internal quotation marks and citations omitted).

Shine has therefore failed to plausibly allege that her torn ligaments and shoulder pain substantially limit a major life activity. If she chooses to amend her Complaint, she is directed to provide more detailed factual allegations regarding how, if at all, her torn ligaments and shoulder pain substantially limit her ability to lift, work, or engage in other major life activities.

### b. Trouble Sleeping

The Court next considers Shine's allegation that she experiences "trouble sleeping." Compl. ¶¶ 37, 41. Sleep is "undoubtedly a major life activity." *Colwell v. Suffolk Cty. Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998) *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553, *as recognized in Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x. 85, 87-88 (2d Cir. 2010); *see also* 28 C.F.R. § 35.108(c)(1)(i). For Shine's difficulty sleeping to qualify as a substantial impairment of a major life activity, however, she must allege facts regarding the frequency, duration, and severity of her sleep impairment. *See Farina*, 458 F. App'x at 16 (holding plaintiff's purported inability to sleep did not constitute a disability where she failed to establish that it was "any worse than is suffered

by a large portion of the nation's adult population") (quoting *Colwell*, 158 F.3d at 644 (2d Cir. 1998)).

Shine has failed to plausibly allege that her sleep has been substantially limited. Her allegation that she experiences "trouble sleeping," Compl. ¶¶ 37, 41, falls below the established standard. *Compare Baerga v. Hosp. For Special Surgery*, No. 97 Civ.0230(DAB), 2003 WL 22251294, at *6 (S.D.N.Y. Sept. 30, 2003) ("[p]laintiff's own self-serving descriptions of sleeping difficulties do not, by themselves, demonstrate an impairment that substantially limits the major life activity of sleep"), *with Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001) (holding that "chronic" inability to sleep that was "profound and well documented" constituted a substantial limitation of major life activity), *aff'd*, 324 F.3d 102 (2d Cir. 2003). As with her allegations regarding lifting, Shine is directed to plead more specific factual allegations regarding her trouble sleeping if she chooses to file an Amended Complaint.

### c. Trouble Cleaning Her Apartment Because She Feels Constant Pain When Using Certain Tools

Shine also alleges that she has "trouble cleaning her [a]partment because she feels constant pain when using certain tools." Compl. ¶ 37. Cleaning one's home is a form of "caring for oneself," a recognized major life activity under the ADA regulations. *See* 28 C.F.R. § 35.108(c)(1)(i); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F. 3d 867, 871 (2d Cir. 1998). Yet once again, Shine's vague allegation that she has "trouble" cleaning is insufficient to establish a substantial limitation to a major life activity within the meaning of the ADA. *See Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) ("vague statements about a plaintiff's difficulties . . . without more, will not suffice to support a finding of an ADA violation"); *Farina*, 458 F. App'x. at 15 (holding conclusory allegations insufficient to establish disability); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (granting defendant's motion to dismiss

because "[a]side from [plaintiff's] conclusory claims that he . . . has difficulty sleeping, walking, and performing daily activities without assistance, he has not identified any evidence demonstrating that his knee injury created a limitation upon a major life activity, let alone a substantial limitation") (internal citations omitted). If Shine amends her Complaint, she must allege more than "trouble cleaning her [a]partment" or "pain when using certain tools," Compl. ¶ 37, to establish that her ability to care for herself was substantially limited.

### d.  Trouble Breathing at Night

Shine next alleges that she experiences "trouble breathing at night." Compl. ¶ 42. Breathing is one of the enumerated major life activities covered under the ADA regulations. 28 C.F.R. § 35.108(c)(1)(i). As described above, courts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding "difficulty" or "trouble" conducting a major life activity. *See Parada*, 753 F.3d at 69; *Farina*, 458 F. App'x. at 15; *Nadel*, 57 F. Supp. 3d at 296. Shine is thus required to plead additional facts beyond simply claiming that she has "trouble breathing at night," Compl. ¶ 42, to establish a substantial limitation, *Farina*, 458 F. App'x. at 15; *Nadel*, 57 F. Supp. 3d at 296.

### e.  Mucus Buildup

Shine further alleges that the mold has led to mucus buildup. Compl. ¶ 42. The operation of the respiratory system is considered a major bodily function and is thus a major life activity under the ADA. 28 C.F.R. § 35.108(c)(1)(ii). But like Shine's allegations regarding her difficulty breathing and sleeping, her allegation that she experiences mucus buildup is insufficient to establish a substantial impairment to a major life activity. *See Parada*, 753 F.3d at 69; *Farina*, 458 F. App'x. at 15; *Nadel*, 57 F. Supp. 3d at 296.

### 2.   C.W.'s Alleged Disability

The Court next turns to Shine's allegation regarding her son, C.W.'s, alleged disability. She alleges that, "as a result of the mold in the [a]partment," C.W. "has trouble breathing and gets headaches." Compl. ¶ 42. She further alleges that "C.W. has asthma and the mold in the [a]partment has forced . . . Shine to put [him] on an asthma machine so he can breathe properly." *Id*. As previously noted, breathing is a major life activity under the ADA, 28 C.F.R. § 35.108(c)(1)(i), and the "operation of major bodily function[s]," including respiratory functions, constitutes a major life activity, 28 C.F.R. § 35.108(c)(1)(ii). Courts in this district have held asthma can substantially limit one's ability to engage in the major life activity of breathing and thus constitute a disability under the ADA. *See Murtha v. New York State Gaming Commission*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *11 (S.D.N.Y. Sept. 17, 2019). A prior decision in this district, for instance, certified a class of NYCHA tenants with asthma who had mold in their apartments, and, after a settlement, ordered a Special Master to ensure that NYCHA comply with a consent decree to remediate the mold because the tenants' "asthma and respiratory problems [were] being exacerbated by the continued presence of mold and excessive moisture." *Baez v. New York City Housing Authority*, 13-cv-8916, 2015 WL 9809872, at *3 (S.D.N.Y. Dec. 15, 2015).

Moreover, Shine alleges that C.W.'s difficulty breathing is severe enough that he requires use of an asthma machine to "breathe properly." Compl. ¶ 43. This is sufficient to allege that C.W. experiences a substantial limitation to the major life activity of breathing, and therefore has a cognizable disability within the meaning of the ADA.

Accordingly, Shine has established the first prong of the *prima facie* case on behalf of C.W., but not on behalf of herself.

**B.      Shine Has Failed to Plausibly Allege That She Made NYCHA Aware of Her and C.W.'s Purported Disabilities**

As described above and as the parties concede in their supplemental briefs, Dkt. 22 at 2-7; Dkt. 23 at 1, a plaintiff can only establish that a defendant failed to provide a reasonable accommodation in violation of the ADA if "the defendant knew or reasonably should have known of the plaintiff's . . . disability[]," *Logan*, 57 F. Supp. 3d at 256; *see also McMillan*, 711 F.3d at 125 (stating a plaintiff bringing an ADA reasonable accommodation claim in the employment context must establish that "an employer covered by the statute had notice of [the plaintiff's] disability"); *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) ("[A]n employer has a duty reasonably to accommodate an employee's disability . . . if the employer knew or reasonably should have known that the employee was disabled."). In other words, "a defendant 'cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations.'" *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 305 (S.D.N.Y. 2014) (quoting *MacEntee v. IBM (Int'l Bus. Machs.)*, 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x. 49 (2d Cir. 2012)). "To satisfy the notice requirement, a plaintiff must demonstrate that the defendant was aware that the plaintiff 'was 'disabled' within the meaning of the ADA.'" *Id.* (quoting *Young v. Ltd. Brands*, No. 11–CV–2927, 2013 WL 5434149, at *8 (S.D.N.Y. Sept. 25, 2013)).

In *Williams v. New York City Housing Authority*, another ADA failure to accommodate action against NYCHA, the court found:

> [T]he Amended Complaint does not suggest any basis for inferring that, prior to the commencement of this litigation, NYCHA either "knew or should have known" of Plaintiff's alleged disability. Indeed, Plaintiff does not allege that she notified NYCHA of any disability that denied her access to her dwelling. "[W]ithout adequate knowledge of her medical condition," NYCHA was "not in a position to even offer, let alone refuse, a reasonable accommodation to plaintiff." T*hompson v. City of New York*, No. 98 Civ. 4725(GBD), 2002 WL 31760219, at *9 (S.D.N.Y. Dec. 9, 2002). Put simply, Plaintiff's Amended Complaint fails to allege sufficient

facts to support a claim that NYCHA discriminated against her by failing to accommodate her disability.

No. 07-CV-7587-RJS, 2009 WL 804137, at *7 (S.D.N.Y. Mar. 26, 2009), aff'd, 408 F. App'x 389

(2d Cir. 2010).  Similarly, in *Allen v. New York City Housing Authority*, the court held:

> At most, Plaintiff's complaint establishes that NYCHA was not timely or effective in its responses to her requests for mold removal and for a transfer. These allegations do not amount to allegations of discrimination . . . . Because Plaintiff nowhere alleges facts that would support claims that NYCHA treated her the way it did "by reason of [her] disability," 42 U.S.C. § 12132, or "because of a handicap," 42 U.S.C. § 3604(f), her claims must be dismissed. In sum, her complaint does not "provide facts sufficient to allow ... defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery for housing discrimination under the FHA, the ADA, or Section 504.

No. 1:15-CV-00173 (ALC), 2016 WL 722186, at *6–7 (S.D.N.Y. Feb. 19, 2016) (internal

quotation marks and citations omitted).

Here, Shine has failed to plausibly allege that NYCHA knew or reasonably should have

known of her and C.W.'s putative disabilities.  Shine contends that she repeatedly asked NYCHA

to fix the mold in the apartment, Compl. ¶¶ 34-35, 38-40, but just like in *Williams* and *Allen*, she

never asserts that she told NYCHA about her and C.W.'s alleged disabilities, or that she was

seeking a reasonable accommodation because of them.  In her supplemental brief, Shine claims

that at the time a NYCHA representative came to the Apartment to see the mold damages in

January 2017, "Shine and her child had already suffered numerous injuries, were disabled and

NYCHA was made aware of said injuries," Dkt. 23 at 2, yet she fails to identify any allegations in

the Complaint that demonstrate how or why this is so.  She never alleges, for example, that she

notified the NYCHA representative of any alleged injuries or disabilities, or that they would have

been obvious to a reasonable person.  She also contends in her supplemental letter that NYCHA

was aware of her and C.W.'s alleged disabilities due to a 2017 landlord/tenant action, Dkt. 23 at

3, but she never included any such allegations in the Complaint.  Shine thus fails to plead that

NYCHA knew or reasonably should have known of her and C.W.'s alleged disabilities, and her ADA and Rehabilitation Act claims are dismissed without prejudice.  If Shine files an Amended Complaint, she must plausibly allege that NYCHA knew or reasonably should have known of her and C.W.'s alleged disabilities—not merely that NYCHA knew or reasonably should have known of the mold.

In light of the fact that Shine has failed to establish the second element of her *prima facie* case, the Court need not reach the third and fourth elements—whether the reasonable accommodation is necessary and whether NYCHA refused to grant the reasonable accommodation.  *Logan*, 57 F. Supp. 3d at 256.

## II.     The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims

Because the Court dismisses Shine's ADA and Rehabilitation Act claims, it declines to exercise supplemental jurisdiction over the negligence and intentional infliction of emotional distress claims.  Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  But a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks omitted).

Here, because the Court dismisses the ADA and Rehabilitation claims early in this litigation, declining jurisdiction over the state tort claims would not disserve the principles of judicial economy, convenience, or fairness, or comity. *Id*. Accordingly, Shine's state tort claims are dismissed without prejudice.

## CONCLUSION

Although the Court is sympathetic to Shine's alleged impairments and C.W.'s asthma, as well as their desire to remediate the mold in their apartment, they have failed to establish a *prima facie* case for a reasonable accommodation claim under the ADA or the Rehabilitation Act. Accordingly, NYCHA's motion to dismiss is granted, albeit without prejudice.

Shine is granted leave to file an Amended Complaint within 21 days of the date of this Opinion and Order. If Shine chooses to amend her Complaint, she must plead additional factual allegations to establish: (1) how her alleged physical impairments substantially limited one or more major life activities, and (2) whether NYCHA knew or reasonably should have known of her and C.W.'s alleged disabilities. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 11.

SO ORDERED.

Dated:    September 18, 2020
          New York, New York

                                        Ronnie Abrams
                                        United States District Judge